The HERTZ CORPORATION,
Plaintiff,

v.

The CITY OF NEW YORK, Michael A. Cardozo, in his official capacity as Corporation Counsel of the City of New York, and Johanna Hall, in her official capacity as Deputy Commissioner of Consumer Affairs of the City of New York, Defendants.

No. 92 CIV. 2192(WK).

United States District Court, S.D. New York.

July 30, 2002.

Paul C. Saunders, Cravath, Swaine & Moore, New York City, for Plaintiff.

Marjorie H. Mintzer, Asst. Corporation Counsel, Corporation Counsel of the City of New York, New York City, for Defendants.

*OPINION & ORDER*

WHITMAN KNAPP, Senior District Judge.

Plaintiff brings this action seeking to enjoin defendants from enforcing Local Law No. 21 of 1992. Currently before us are defendants' motion for summary judgment and plaintiff's cross-motion for the same. We heard oral arguments from the parties on Monday, July 22, 2002. For the reasons that follow, we grant plaintiff's motion.

**FACTUAL BACKGROUND**

On January 2, 1992, plaintiff Hertz Corporation ("Hertz") announced that it would increase the daily car rental fees it charges to New York City residents based solely on the borough in which they live; $56.00 for Bronx residents, $34.00 for Brooklyn residents, $15.00 for Queens residents and $3.00 for Manhattan residents. The rates

for the residents of Staten Island would remain unchanged. The increased rates were to be charged to persons residing in those boroughs whenever they rented a car at a Hertz outlet in the New York metropolitan area, New Jersey, Southern Connecticut, or Eastern Pennsylvania. Customers who rented in New York City but did not reside there would not be subject to the increased rates.

Hertz explained the increase in cost as making up for the extremely high liability expenses it endured by renting cars to residents of New York City. Its studies had shown that the losses were not only attributable to rentals to New York City residents, but that the degree of the loss varied by borough.

Specifically, Hertz alleged that although only 7.2 % of its domestic rental transactions had been in the New York City region, it accounted for almost 25 % of its liability losses. One of the reasons Hertz indicated was a state statute that held car owners vicariously liable for any monetary damages caused by the operation of their vehicles. See N.Y. Vehic. & Traf. § 388 (McKinney 1986). Another purported reason for the high liability losses in the region was that juries in some of the subject boroughs had a history of awarding high damages to plaintiffs in personal injury cases.

Hertz excluded several groups of renters, those thought to be low-risk groups, from the increase. For example, those who hold contracts with Hertz, such as federal and corporate accounts, and certain other categories of renters—those possessing airline tickets, members of Manhattan Preferred Renters Club, and Platinum Service customers. Hertz Gold Club members were also excluded, since they do not check in at a rental-car outlet and therefore could not practicably be notified of the increased rate. In addition, on March 11, 1992, Hertz announced the establishment of its "Responsible Renter Qualification Program," under which persons who would otherwise be subject to the increased rates could apply for and receive an exemption if they could demonstrate that they met certain qualifications, including a safe driving record for at least three years.

In response to Hertz's proposed price increase, and after Hertz was unsuccessful in convincing it not to pass restrictive legislation, the City of New York (the "City") passed Local Law No. 21 of 1992, which amended chapter four of title 20 of the City's administrative code ("Local Law No. 21"). It provides:

> No rental vehicle company shall refuse to rent a motor vehicle to any person otherwise qualified based on that person's residence, nor impose fees or charges based on that person's residence.

The City articulated three reasons for enacting Local Law No. 21:(1) to prevent discrimination against minorities; (2) to prevent discrimination against the working poor; and (3) to prevent divisiveness among the various boroughs and neighborhoods of the City. In passing Local Law No. 21 it noted that the surcharges would be imposed unfairly upon all renters within a given borough, regardless of their driving records, and regardless of where the car would be driven.

In addition to enacting Local Law No. 21, on January 17, 1992, the City, along with the people of the state of New York, commenced an action in Supreme Court, New York County, claiming that Hertz's rate increase violated state and local law because of its disparate impact on minorities, and Section 396–z(10) of New York's General Business Law (the "State Action"). On June 11, 1992, the City voluntarily withdrew from the State Action and

dismissed all of its causes of action against Hertz.

Since its inception, due to a stay issued by this Court, Local Law No. 21 has never been enforced and Hertz has been implementing its price increase.

## PROCEDURAL HISTORY

On March 27, 1992, Hertz commenced this action minutes after the Mayor had approved Local Law No. 21, seeking a declaratory judgment establishing its invalidity and a preliminary and permanent injunction against its enforcement. In its original complaint, Hertz claimed that Local Law No. 21:(1) was preempted by Section 1 of the Sherman Antitrust Act and thus invalid under the Supremacy Clause of the United States Constitution; (2) violated the Commerce Clause of the United States Constitution; (3) violated the Contracts Clause of the United States Constitution; (4) violated Hertz's substantive Due Process rights; (5) constituted an impermissible regulatory taking; (6) violated 42 U.S.C. § 1983; and (7) was preempted by state rental car legislation.

On March 31, 1992 we held a hearing on the merits and dismissed the complaint, but simultaneously enjoined the City from taking any action to effectuate Local Law No. 21 pending the outcome of any appeal by Hertz. Hertz appealed the dismissal; the City neither cross appealed nor made any effort to vacate our order enjoining enforcement of Local Law 21 pending Hertz's appeal.

On June 10, 1992, the Second Circuit certified a question to the New York State Court of Appeals, asking it to decide the state-law preemption claim. On December 22, 1992 the New York Court of Appeals answered the state-law preemption question in the negative. On August 2, 1993, the Second Circuit issued its opinion, reversing our dismissal of the Sherman Antitrust Act preemption and Commerce Clause claims, as well as the 42 U.S.C. § 1983 claim as it applied to those two claims. It affirmed our dismissal of Hertz's regulatory taking, impairment of contracts, and substantive due ˙process claims.

In its opinion, the Second Circuit stated that the City's actions had not been carried out pursuant to a clearly articulated state policy and, therefore, Local Law No. 21 was not protected by state-action immunity from antitrust liability. *Hertz Corp. v. City of New York* (2d Cir.1993) 1 F.3d 121, 128–29. However, in remanding the case to us for further proceedings, it instructed us that we were to consider Hertz's antitrust claim under a "rule of reason" analysis rather than a *per se* rule since "this particular effort involves the novel claim by the [C]ity that the local law promotes a non-economic objective: the virtue of anti-discrimination." *Id.* at 129.

As for Hertz's Commerce Clause claim, the Second Circuit found that its complaint had not sufficiently alleged that Local Law No. 21 had a discriminatory impact on interstate commerce. *Id.* at 131–32. However, since we had had little time, only four days, "to fully explore the implications of Hertz's commerce-clause argument," it instructed that we give Hertz the opportunity "to develop further its contentions with respect to the law's impact on interstate commerce." *Id.* at 132. The Second Circuit further left for us to determine what role, if any, 42 U.S.C. § 1983, creating civil liability for deprivations of certain federal rights under color of state law, may have in the resolution of the antitrust and Commerce Clause claims. *Id.* at 133.

On June 28, 2002, in response to the Second Circuit's decision, Hertz filed an amended complaint restating its Sherman Antitrust Act preemption claim, alleging that Local Law No. 21 is preempted because it "compels anti-competitive private

conduct by prohibiting all rental vehicle companies operating in New York City from pricing on the basis of their renters' residence—thereby eliminating horizontal competition in the residence-based market." (Am. Compl. at ¶ 19). In addition, Hertz supplemented its Commerce Clause claim by alleging that Local Law No. 21 imposed burdens on interstate commerce that are clearly excessive in relation to any alleged putative local benefits by forcing Hertz either to absorb large losses, increase rental rates across the country or increase rental rates for out-of-state residents renting in New York City. (*Id.* at ¶ 25). In addition, Hertz alleges that enforcement of Local Law No. 21 would violate Hertz's aforementioned constitutional rights protected by 42 U.S.C. § 1983. (*Id.* at ¶¶ 32–33). Accordingly, Hertz requests a judgment declaring Local Law No. 21 void under the Supremacy Clause because of the Sherman Antitrust Act, the Commerce Clause, and rights protected by 42 U.S.C. § 1983, in addition to a permanent injunction barring the City or its officers from taking any action to invoke, enforce or apply Local Law No. 21.

## DISCUSSION

### I. The Antitrust Claim

#### A. The Second Circuit's Instructions

In directing us to apply the rule of reason to the case at hand, the Second Circuit noted that none of the precedents it considered involved "a challenge to restraints on competition imposed by municipal activity." *Hertz Corp. v. City of New York* (2d Cir.1993) 1 F.3d 121, 130. For this reason, it stated, "[a]pplication of the rule to this emerging legal field will require considerable tailoring to achieve even an approximate fit." *Id.*

The Second Circuit instructed us to evaluate whether Local Law No. 21 is preempted by the Sherman Antitrust Act, by "balanc[ing] the [C]ity's articulated jus-

tifications for promulgating the anticompetitive regulation against the antitrust harm caused by the regulation." *Id.* It further stated:

> The legality of the [C]ity's restraint on trade must be determined by weighing all the relevant factors—including the history of the restraint, the evil to be prevented, the history and practices of the relevant industry, the local government's reasons for adopting the particular restraint; and the end sought to be attained[.] Accordingly, the district court may consider the [C]ity's articulated concern of avoiding nondiscrimination by ensuring that Hertz's pricing and rental decisions do not burden minorities and the working poor. This places into the economic scale of traditional antitrust analysis noneconomic federal values embodied in the thirteenth and fourteenth amendments as well as in many of the federal statutes. We think consideration of such a federal policy is appropriate within the rule-of-reason analysis as it is applied to a municipality.

*Id.* at 130–31 (internal citations omitted).

The Second Circuit went on to say:

> Hertz, of course, is entitled on remand to present evidence disputing the validity and strength of the [C]ity's justifications for this anticompetitive regulation. The [C]ity's justifications must be assessed in light of its stated end; this makes relevant Hertz's explanation for its price increase—specifically, its claim to have experienced exceedingly high liability losses in certain boroughs. The [C]ity's history of negotiating with Hertz concerning what it felt to be an objectionable pricing policy is relevant, as is Hertz's consideration of less burdensome pricing methods.

*Id.* at 131

It is with consideration of these well-delineated instructions, in addition to Lo-

cal Law No. 21's history of non-enforcement, that we apply the rule of reason.

## B. Our Analysis

As previously stated, the City's articulated justifications for passing Local Law No. 21 were three fold: (1) to prevent discrimination against minorities; (2) to prevent discrimination against the working poor; and (3) to prevent divisiveness in the City. For the purposes of this motion, the City concedes that Hertz instituted its residence-based pricing action only after determining that there was a statistically significant correlation between the boroughs of residence of the renter and significant liability losses and that Hertz's residence-based price increase was directly correlated to its liability losses per day in each borough. However, it argues that Local Law No. 21 would have little effect on competition because there is insufficient evidence that residence-based price competition actually exists in New York City and because Hertz could recoup its liability losses by raising the rate of all rentals in New York City by $3.29 per day. However, as Hertz points out, the Second Circuit has already determined Local Law No. 21 to be anticompetitive. *Hertz Corp.*, 1 F.3d at 127 ("Local Law No. 21 calls for anticompetitive private conduct in setting rental decisions.").[1]

Hertz argues that the City has not offered any support for its articulated justifications for Local Law No. 21. by which we can test its "validity and strength," as directed by the Second Circuit. *See Id.* at 131. The City's response is that it need not produce such evidence since its mere articulation of its reasons behind promulgating Local Law No. 21 is sufficient since it is a municipality and therefore we should grant it substantial deference. In the alternative, the City has included in its briefs data from the 1990 census showing the racial makeup and median income of the effected boroughs. (The City's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment, and in Opposition to Hertz's Cross Motion for Summary Judgment Exs. A & B).

We disagree with the City's arguments. First, in support of its contention that we need to grant its articulated justifications substantial deference the City points to Judge Higginbotham's concurring opinion in *Affiliated Capital Corp. v. City of Houston* (5th Cir.1984) 735 F.2d 1555, to which the Second Circuit cited in support of the proposition that we may consider noneconomic factors in our rule of reason analysis. *Hertz Corp.* 1 F.3d at 130–31. However, nothing in Judge Higginbotham's or the Second Circuit's opinions leads us to believe that we may take the City's articulated justifications, albeit sound ones, at face value without any evidence to establish that Local Law No. 21 would actually further these goals.

Secondly, while the census data to which the City directs us shows the racial makeup and median income of the effected boroughs and their correlation to the applicable surcharges, such information does not indicate which constituents of those boroughs are in fact effected by the price increase. We do not know the race or the socioeconomic status of those who live in the effected boroughs who rent cars from Hertz. For this reason, the census data offered by the City does not support its justifications.

1. Hertz further explains the anticompetitive effect Local Law No. 21 would have if it were enforced as follows: Hertz would have to raise its rates for all customers renting cars in the New York area and, as is the nature of competition, other rental companies, who otherwise do not have to raise their rates due to liability losses, would similarly raise their rates until they were at or just below the Hertz rate. (Hertz's Reply Memorandum of Law on Its Cross–Motion for Summary Judgement at 5 n. 3)

Furthermore, the time that has elapsed since the incept of this litigation has allowed us to consider Local Law No. 21, which has never actually taken effect, with the hindsight that we did not have when this case was brought in 1992. Hertz has been implementing its price increase for the past ten years. Especially given these particular circumstances, we think the City should be able to point to some evidence that the Hertz pricing action is discriminative and in fact hurts those who Local Law No. 21 seeks to protect. While the City's articulated concerns are themselves of great import, it must show that Local Law No. 21 has some correlation to such justifications and thus outweighs its already established antitrust effects, which it has not done.

In addition, ten years of non-enforcement has given Hertz the opportunity to demonstrate that the price increase has achieved the stated purpose behind its creation. Hertz's liability losses have continued to decline in the years since the surcharges were first implemented. Hertz has showed that it first negotiated with the City before its plan took effect had that it tried other alternative approaches without success in its attempt to reduce its liability losses. It has further created the "Responsible Renter Program," permitting those otherwise subject to the increased rates to be exempt by meeting certain qualifications associated with being a lower liability risk.

For these reasons, we find that Local Law No. 21 does not survive the rule of reason analysis and therefore is preempted by Section 1 of the Sherman Antitrust Act.

## II. Hertz's Other Claims

Since we find in Hertz's favor on preemption grounds we need not address its Commerce Clause claim.

As to Hertz's claim under 42 U.S.C. § 1983, we grant such claim to the extent that the enforcement of Local Law No. 21 would violate the Supremacy Clause if it were to go into effect.

## CONCLUSION

For the aforementioned reasons, we find that Local Law No. 21 is preempted by Section 1 of the Sherman Antitrust Act and therefore grant Hertz's claims under the Supremacy Clause and 42 U.S.C. § 1983. In addition, we permanently enjoin the City from enforcing such law.

**SO ORDERED.**